**FARMER, ET., Plaintiffs-Appellees, v SCHOEPFLIN, ET AL., Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20625. Decided May 5th, 1947.

Walter V. Zuber, for plaintiff-appellees.

C. A. Reimenschneider, Cleveland, H. C. Gahn, Cleveland, for defendant-appellants.

## OPINION

By MORGAN, J.

The plaintiffs are husband and wife, and likewise the defendants. Mrs. Farmer is a sister of Mrs. Schoepflin.

In 1938 Nine R. Schoepflin took title from the Home Owners Loan Corporation to the house and lot located at 2440 Queenston Road. The consideration was $8400.00 of which ten percent or $840.00 was cash. Mrs. Schoepflin borrowed $500.00 from a friend and with $340.00 of her own money made the cash payment.

Both the Farmer and Schoepflin families moved into the house with their furniture in 1938. The Farmers have paid $10.00 a week to either Mr. or Mrs. Schoepflin and have divided the gas and electric light bills. The payments to the Home Owners Loan Corporation of $60.00 a month, taxes, insurance and other expenses, were paid by the defendants.

In 1943 Mrs. Schoepflin became seriously ill with arthritis; she was unable to go up and down stairs and in October of that year she went to Hot Springs, Arkansas, and since that time she has been passing her winters in Hot Springs and her

summers at a little farm in Chardon, Ohio. Mrs. Schoepflin has not been living in the house for three years.

This action was brought by the Farmers to assert their claim to a ½ interest in the Queenston Road property, a claim which is denied by the defendants.

The trial court granted the plaintiffs the relief prayed for and the defendants have filed their appeal to this court.

At the hearing Mr. Farmer testified to many conversations with Mr. Schoepflin beginning in 1938 and extending to the last year in which Mr. Schoepflin stated that the Farmers had a one-half interest in the Queenston Road property. Mrs. Farmer also testified to similar conversations with Mr. Schoepflin.

Although Mr. Schoepflin denied such conversations the weight of the evidence is that such conversations as related by the Farmers actually did occur.

Mr. Schoepflin does not claim any interest in the Queenston Road property. He testified:

"My wife paid the whole amount. Well, I paid $100.00 for her, and she refunded it the next day."

Also:

"I had no interest in the property. That belongs to my wife."

The fatal weakness in the plaintiffs' case is found in the fact that neither Mr. nor Mrs. Farmer claim to have had any understanding with Mrs. Schoepflin, the holder of the legal title, that the Farmers had any interest in the Queenston Road property.

When asked how often he had discussed the proposition with Mr. and Mrs. Schoepflin, Mr. Farmer stated:

"With Mrs. Schoepflin just once. With Mr. Schoepflin numerous times."

The conversation with Mrs. Schoepflin "was not very long before she went to Hot Springs," which was in October, 1943. At this conversation Mr. Farmer testified that he told Mrs. Schoepflin that the property was "not hers," that it belonged to "both of them," to which Mrs. Schoepflin replied: "This house was hers and she would do what she pleases with it."

Mrs. Schoepflin testified as to a conversation with Mr. Farmer in 1942 or early in 1943, evidently the same conversation testified to by Mr. Farmer. She said, "One day, I would say that was in '42, I was sitting upstairs and Mr. Farmer came up and said, 'what I want to know is whether we are owners or renters,' and I said, 'certainly you are renters; do you think I am a plain fool?' "

The Farmers and the Schoepflins had lived in the house together from the summer of 1938 to the winter of 1943. The Farmers had been paying $10.00 a week to the Schoepflins during the whole period but not one word was said about the ownership of the property to Mrs. Schoepflin by either of the Farmers, until the above conversation when Mrs. Schoepflin claimed that the property was hers and Mr. Farmer claimed a half interest in the property. The conversation ended there and nothing again was ever said about the matter to Mrs. Schoepflin until this case was filed.

When asked why Mrs. Farmer's name was not on the deed Mr. Farmer testified, "the suggestion came from Mr. Schoepflin that we take title in the name of the wives" and Mr. Farmer said that he did not wish this to be done "because of some very personal matters."

Mr. Farmer testified that he did not "care to go into the personal matters." The court then asked the witness as to why he did not wish to disclose the reasons, and Mr. Farmer replied, "I felt that we were going to have trouble sooner or later and in that event I did not want to get tangled up with the title to her in that realty." Mr. Farmer also testified, "They were insistent upon buying a house these eight years ago, and I was reluctant about the whole thing but I said, 'we will try it out' and for that reason I asked that title be put in her name because I had no confidence that the transaction would eventually be good."

Mr. Farmer's frank statement that he did not "want to get tangled up with the title to her (that is Mrs. Schoepflin) in that realty" and that he did not wish his wife to take title with her sister "because I had no confidence that the transaction would eventually be good" demonstrates that in 1938 Mr. Farmer was unwilling to assume any of the obligations or responsibilities of the title. It must be remembered that we had just passed through a great depression and in fact in 1938 we were still in it. Many thousands of deficiency judgments had been recovered against unfortunate mortgagors and it is evident from Mr. Farmer's testimony that he was unwilling for himself or his wife to "get tangled up with the title" to the

Queenston Road property. When Mr. Farmer was asked, "Did you assume with the Home Owners Loan Corporation any obligation on the note and mortgage" he answered, "of course, not." He had no confidence that the transaction would be profitable. Clearly the Farmers could not accept the benefits of a half-ownership without assuming the obligation.

Mrs. Farmer when asked as to the conversations preceding the buying of the house, said, "I didn't talk to Mrs. Schoepflin. All that was with Mr. Schoepflin." When asked, "do you know how much was paid for the property of your own knowledge?" she answered, "No, I didn't pay any attention." When asked whether she had not discussed that with Mr. and Mrs. Schoepflin, she answered, "No, he said it would be taken care of and I knew if he didn't take care of it Mrs. Schoepflin would."

When asked whether she had ever discussed with Mrs. Schoepflin the ownership of the house, Mrs. Farmer answered, "No, I never discussed that with her." When asked as to whether she did not know "that the title was to be placed in Mrs. Schoepflin" she answered that she did not. When asked as to when she found it out, her answer was "the first week after we had moved," that is in 1938. Although for the next four years she and her sister lived in the same house, her claim of an interest in the title was never mentioned to her sister.

Mrs. Schoepflin testified in great detail as to conversations with her sister, Mrs. Farmer, about the rent the Farmers were paying prior to 1938 and about Mrs. Schoepflin buying a house where "we could give them cheap rent." The Farmers were then paying $55.00 a month rent. Mrs. Schopeflin first looked at a house on Ormond Street that could be purchased for $6500.00 and she told her sister that at this price she could give them $30.00 a month rent. When the purchase of the Queenston Road property was suggested, she told her sister that the rent would be $40.00 a month. Asked whether the Farmers claimed any interest in the house, Mrs. Schoepflin answered, "there was never any suggestion that the house was not mine."

When the matter of buying a house was first broached Mrs. Schoepflin testified that she said to her sister, "Ruth, you are sure you don't want to buy?" She answered, "she didn't want to buy." Mrs. Schoepflin further testified, "I would not buy a house with anyone, least of all my relatives, because I consider it poor business."

Neither plaintiff testified in rebuttal and the evidence of Mrs. Schoepflin is uncontradicted except insofar as it was contradicted by the evidence in chief.

In his statements to Mr. and Mrs. Farmer was Mr. Schoepflin speaking as Mrs. Schoepflin's agent? The plaintiffs closed their case in chief without offering any evidence as to agency. They proved that Mr. Schoepflin was making collections, paying bills and making repairs and in these matters was undoubtedly representing Mrs. Schoepflin, the title owner. Also, on cross-examination of Mr. Schoepflin he was asked, "You were acting as your wife's agent when this property was purchased too, weren't you?" A. "You might construe it that way, yes."

All this falls far short of an authority to Mr. Schoepflin to make statements impressing a trust on one-half of the title in favor of the Farmers.

All of the parties to the case agree that Mrs. Schoepflin is a strong-minded woman and accustomed to having her own way. She is the kind who runs her own business, makes her own decisions and is not dominated by her husband. When the plaintiffs decided that they had a half interest in the property they should have taken the matter up directly with Mrs. Schoepflin and should not have relied on statements made by Mr. Schoepflin concerning which there is no evidence that Mrs. Schoepflin was informed in any way.

The plaintiffs claimed also that they made some repairs. The evidence shows that all outside repairs were made by the defendants and all the repairs were made by Mrs. Schoepflin while she was living on the property. The evidence shows interior repairs amounting to about $250.00 were made the last two years by the Farmers while Mrs. Schoepflin was living elsewhere. No evidence was offered that Mrs. Schoepflin was informed as to those repairs and she denied any knowledge of them. She has never been in the house since they were made.

It is not unusual that as renters the plaintiffs would make some interior repairs when they were left in sole possession of the property.

It is our opinion that the plaintiffs have failed to sustain the burden imposed upon them to prove by clear and convincing evidence their ownership to any part of the Queenston Road property.

Decree for defendants. Order see journal. Exceptions.

HURD, PJ, and SKEEL, J, concur.